|2FOIL, Judge.
This appeal challenges the action of the trial court in vacating a modified hazardous waste permit. After a thorough review of the record, we reverse.
PROCEDURAL BACKGROUND
The lengthy facts forming the basis for this appeal are not in dispute. Calcasieu League for Environmental Action Now (CLEAN) filed this lawsuit challenging an order of the Commissioner of Conservation which granted a modified permit request submitted by CECOS International, Inc. (CECOS). CECOS operates a waste disposal facility in Calcasieu Parish, commonly referred to as the Willow Springs facility. Pri- or to 1989, CECOS operated a Class I hazardous waste disposal well at the facility under the authority of a commercial waste disposal permit issued by the Louisiana Department of Natural Resources, Office of Conservation (Conservation). Pursuant to this permit, CECOS disposed of commercially derived liquid hazardous waste generated by various chemical and manufacturing companies.
On November 20, 1989, Conservation promulgated Statewide Order 29-N-2, which required all operators of existing Class I hazardous waste injection wells to apply to Conservation for approval to continue operating. In accordance with this order, CECOS submitted its “repermit” application, in which it specifically requested that the status of its well be changed from commercial to noncommercial hazardous waste disposal. In the application, CECOS identified the sources of waste to be disposed of as those wastes generated by CECOS and its parent company, Browning-Ferris Industries (BFI).
After informing CECOS that the application was administratively complete, Conservation prepared a draft permit which set forth that CECOS was amending the status of its well from commercial to noncommercial hazardous waste disposal. The draft permit identified the source of waste to be disposed as those wastes generated by CECOS and BFI.
Thereafter, members of the public, including CLEAN, challenged the repermit request on the basis that Louisiana law precluded the ^holder of a noncommercial permit from disposing of waste generated by any entity other than the holder of the per *145 mit, including affiliates of the permit holder, Specifically, CLEAN relied on La.R.S. 30:4.1, which provides that the term “commercial operations” as defined in the environmental laws “pertains to those who dispose of hazardous waste material off the site where produced by others.” (Emphasis added). CLEAN urged that the draft was contrary to the law because it allowed CECOS to dispose of wastes generated by “others” (its affiliates) while operating as a noncommercial facility. Conservation agreed with the public comment, and in written responses thereto, stated that allowing CECOS to dispose of wastes generated at facilities other than those owned or operated by CECOS would break the corporate veil, and would violate the intent of the repermit application to convert the facility to noncommercial waste disposal.
On December 18, 1991, Conservation issued Order No. 91-25 WD, approving the continued operation of CECOS’ well as a Class I noncommercial hazardous waste disposal well. The order limited the sources of wastes to be disposed of to wastes generated at facilities owned or operated by CECOS. The order specifically prohibited CECOS from disposing of any wastes generated by BFI or any of BFI’s subsidiaries.
Several days later, CECOS petitioned Conservation to reconsider and to hold an adjudicatory hearing on the order, challenging the waste source limitation contained in the order. CECOS urged that it had expressly requested permission to continue injecting wastes generated by BFI and its subsidiaries. However, the order issued by Conservation represented a complete reversal of Conservation’s earlier position, as evidenced by the draft permit, that CECOS could permissibly operate a noncommercial facility and dispose of wastes generated by BFI. CECOS contended that Conservation should have given it the opportunity to be heard on the waste source issue prior to issuing Order No. 91-25 WD, and UConservation should have resolved this crucial question before issuing the permit.[1]
On March 17, 1992, CECOS submitted a request for modification of the order, seeking authority to operate the well as a Class I commercial hazardous and non-hazardous waste disposal well. Conservation issued a draft modified permit for public notice. The draft modified permit provided that all references in the initial order stipulating the disposal well as being authorized only for Class-I noncommercial waste disposal were nullified. The public notice advised that if the modification was granted, CECOS would revert back to a Class I commercial hazardous waste injection well operator.
A public hearing on the modified permit request was held, during which many members of the public, including representatives of CLEAN, spoke out against the proposed modification, urging Conservation to allow the noncommercial permit with its waste source limitation to remain in full force. CLEAN also filed written comments on the proposed modification, contending that there was no “legal cause” to justify the modification.
On July 7,1992, Conservation granted CE-COS’ request for a modified permit, and issued Supplement to Order No. 91-25 WD, which is the challenged action in this litigation. The supplemental order authorized the operation of the facility as a Class I commercial restricted hazardous and unrestricted nonhazardous waste disposal facility. It limited the source of commercial waste disposal to: (1) hazardous waste generated at facilities owned or operated by CECOS; (2) hazardous waste generated at facilities owned or operated by BFI or subsidiaries of BFI; and (3) waste generated as a result of BFI or its subsidiaries’ involvement in |SCERCLA corrective actions (Superfund clean-ups). The modified permit also allowed CECOS to dispose of nonhazardous waste from any source.
*146 Thereafter, CLEAN filed this lawsuit against Conservation and CECOS, contending that the modified permit was improperly issued on two procedural grounds. First, CLEAN urged that the modification was unlawful because Conservation did not have “legal cause” necessary for permit modification. Secondly, CLEAN contended that the public notice and fact sheet on the proposed modification were procedurally deficient because they did not specifically list all sources of waste and volumes of waste to be disposed of at the facility, in contravention of Conservation’s rules and regulations.
CECOS filed an exception of no right of action, asserting that CLEAN did not have standing to seek judicial review of the Supplemental Order. Additionally, CLEAN, CECOS and Conservation filed motions for summary judgment, agreeing that there were no facts in dispute in this case.
After a hearing, the trial court ruled that CLEAN did have standing to bring the action. The trial court then proceeded to grant CLEAN’s motion for summary judgment, finding that the supplemental order was illegal because Conservation did not have “cause” to modify the original permit. Because of its ruling on the cause issue, the trial court pretermitted consideration of CLEAN’s notice argument. The court declared Supplement to Order No. 91-25 WD invalid, revoked it, and enjoined Conservation from issuing any future permit modifications without a showing of cause and without providing for notice and an opportunity to be heard.
This appeal, taken by CECOS and Conservation, followed. CECOS challenges the trial court’s standing ruling, while both appellants attack the court’s action in vacating the modified permit. In addition to defending the trial court’s ruling on the cause issue, CLEAN also asserts that the permit modification was illegal because it was done without proper notice. These disputes will be addressed in turn.
| .STANDING
Because CLEAN is an organization, for it to have standing to challenge the modified permit on behalf of its members, it must demonstrate that: (1) its members would otherwise have standing to sue in their own right; (2) the interests sought to be protected are germane to the organization’s purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit. Ramsey River Road Property Owners Association, Inc. v. Reeves, 396 So.2d 873, 874 (La.1981); Save Ourselves, Inc. v. U.S. Army Corps of Engineers, 958 F.2d 659, 661 (5th Cir.1992). La.R.S. 30:12 authorizes a person who is “aggrieved” by an order of Conservation to obtain judicial review of that order. CECOS contends that CLEAN has not established that its individual members are “aggrieved” by the action of Conservation in modifying the permit, and therefore, CLEAN does not have standing to attack the supplemental order.
The record reflects that CLEAN is a nonprofit community organization committed to environmental protection. Domiciled in Cal-casieu Parish, CLEAN’s membership includes nearly 400 persons, the majority of whom reside in Calcasieu Parish. Some of CLEAN’s members reside, work and operate businesses within two miles of the CECOS Willow Springs underground injection well, and some of its members receive their drinking water from underground wells located near the facility.
In attempting to establish that its individual members were “aggrieved” by Conservation’s action in modifying the permit, CLEAN alleged that by greatly increasing the number of sources of waste that could be disposed of at the CECOS facility, the modified permit increased the risk of danger to the environment, and to the health and welfare of CLEAN’s members and their families who live, work and recreate in the area of the facility. CLEAN pointed out that while the original noncommercial permit authorized CECOS to inject hazardous waste from only 6 CECOS facilities into the well, the modified permit allowed it to inject hazardous waste from all BFI facilities and all Superfund clean-up sites where BFI was a Jípotentially responsible party, as well as authorizing the injection of nonhazardous waste *147 from any entity. CLEAN offered evidence demonstrating that BFI has 436 facilities worldwide, and is a potentially responsible party in 39 Superfnnd clean-up sites. Based on this evidence, CLEAN charged that the modified permit greatly expanded the potential number of hazardous waste disposal sources from 6 to 475 sources.
CLEAN averred that waste source increase permitted under the challenged order would result in a more chemically complex and diverse waste stream than authorized under the original permit. It charged that by allowing a larger and more chemically complex and diverse waste stream to be disposed of at the facility, the modified permit increased the risk of contamination to nearby underground wells, increased the risks of its members’ exposure to waste, and increased the risk of accidents or other harms resulting from the increase in transportation of wastes to the site.
The parties rely on different eases in support of their respective standing arguments. CLEAN relies on Matter of BASF Corporation, Chemical Division, 533 So.2d 971, 973 (La.App. 1st Cir.1988), in which this court defined the term “aggrieved” in the context of the statute authorizing judicial review of actions of the Department of Environmental Quality. See La.R.S. 30:2024 (formerly La. R.S. 30:1072 C). This court stated that to be “aggrieved” within the context of that statute, a party must have a real and actual interest which is or may be adversely affected by the governmental decision. Id. at 973. Recently, in Matter of Recovery I, Inc., 93-0441 (LaApp. 1st Cir. 4/8/94); 635 So.2d 690, 694, v/rit denied, 94-1232 (La. 7/1/94); 639 So.2d 1169, this court utilized the BASF test in deciding whether civic and environmental groups had standing to challenge a DEQ compromise agreement. This court found that the groups had sufficiently alleged grievances indicating that they had a “real and actual interest in the object of [the] appeal,” and were therefore “aggrieved” within the context of La.R.S. 30:2024 (C). Id. at 695. CLEAN urges that it has clearly shown that its members have real 18and actual interests which may be adversely affected by the modified permit, and therefore, it has standing to bring this lawsuit.
CECOS submits that Louisiana jurisprudence has not sufficiently defined the meaning of the term “aggrieved” in La.R.S. 30:12, and therefore, this court should look to federal law for guidance. In Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), relied on by CECOS, the United States Supreme Court enunciated a test for determining whether a plaintiff was “adversely affected or aggrieved by agency action within the meaning of a relevant statute” so as to seek judicial review of an agency action under the Federal Administrative Procedure Act. 5 U.S.C.A. § 702. In Lujan, the Court held that to have standing, the plaintiff must establish that the injury complained of (the aggrievement or adverse effect on the plaintiff) falls within the “zone of interests” sought to be protected by the statutory provision whose violation forms the legal basis for the complaint. Id. 110 S.Ct. at 3186. After satisfying the “zone of interests” test, the plaintiff must then show that the interests were “actually affected” by the challenged governmental action. Id. at 3187.
CECOS contends that utilizing the Lujan analysis, CLEAN does not have standing because it has not alleged interests that will actually be affected by the modified permit. It complains that the injuries CLEAN has identified are all based on the alleged increase in volume of waste to be disposed of at the site. However, CECOS points' out that limitations as to the amount of waste and the type of waste that can be disposed of at the facility are identical under both the original permit and the modified permit. Since CLEAN’s allegatipns of injury are premised on the increased volume of waste to be disposed of at the site, and because the volume restrictions are the same under both permits, CECOS contends that CLEAN simply cannot show that the modified permit actually affected its members in any adverse manner. Furthermore, CECOS submits that CLEAN may not use the alleged incompatibility of the wastes to be injected under the modified' permit in support of its standing 19argument, because CLEAN did not chai- *148 lenge the merits of Conservation’s compatibility determination. Finally, CECOS posits that the second set of injuries relative to the increased transportation dangers falls “outside of the zone of interests” sought to be protected under the Conservation statutes because the Commissioner of Conservation’s jurisdiction does not extend to the transportation of hazardous waste.
Although it is true that the modified permit did not actually increase the volume of and types of hazardous waste that could be disposed of at the CECOS facility, it did greatly expand the potential number of sources of waste that CECOS could accept for disposal into its well. For all practical purposes, there will in fact be an increase in waste disposal (both hazardous and nonhazardous) at CECOS’ facility because of the issuance of the modified permit. Indeed, CECOS’ very objective in obtaining the modified permit was to dispose of more waste than the original noncommercial permit authorized. CLEAN has successfully demonstrated that the significant expansion of authorized sources for waste disposal may actually adversely affect its members’ health and safety by increasing the risk of danger to the environment. CLEAN’s allegations are sufficient to establish that its members do have real interests sought to be protected by the Conservation laws, which may actually be adversely affected by the modified permit. Accordingly, we find that under La.R.S. 30:12 and the tests enunciated in BASF, Recovery I and Lujan, CLEAN’s members are “aggrieved” by the action of Conservation in modifying the permit, and therefore, CLEAN is entitled to seek judicial review of the modified permit on behalf of its members.
CAUSE TO MODIFY THE PERMIT
Next, we address CECOS’ and Conservation’s allegation that the trial court erred in finding that Conservation did not have legal cause to modify the original permit. Statewide Order No. 29-N-2, promulgated by Conservation, sets forth regulations governing Class-I underground hazardous waste injection wells. LAC 43:XVII.213 contains standards and requirements in actions | ipinvolving permit modifications. LAC 43:XVII.213B(1) provides that a permit may be modified “for cause.” Paragraph C of LAC 43:XVII.213 enumerates four “causes” for modification of permits. CECOS and Conservation urge that Conservation had authority to modify CECOS’ original permit under 43:XVII.213C(l)(b), which allows permit modification based on “new information.”
That provision reads as follows:
b. Information. The Commissioner has received information pertinent to the permit. Permits for Class I hazardous waste injection wells may be modified during their terms for cause only if the information was not available at the time of permit issuance (other than revised regulations, guidance, or test methods) and would have justified the application of different permit conditions at the time of issuance. Cause shall include any information indicating that cumulative effects on the environment are unacceptable.
In commenting on the appropriateness of CECOS’ permit modification request, the Commissioner of Conservation stated:
When the applicant CECOS International, Inc. submitted their repermit application in early 1991, it was with the intent of. applying self-imposed restrictions by limiting subsurface disposal to its own hazardous waste and that hazardous waste generated by and through the Browning-Ferris Industries, Inc. (BFI) family of companies; thus seeking to revert to a noncommercial disposal status. Under certain governmental agencies rules, a disposal status of noncommercial might be proper under that given situation. But, under rules, regulations and/or definitions of the Louisiana Department of Natural Resources (LaDNR) disposing of waste generated off-the-site of the injection well facility generated by an entity other than the owner or operator of the injection well or named holder of the injection well permit is considered a commercial operation. In the matter at hand, this applies to a subsidiary wishing to dispose of its parent company’s waste as was the ease of CECOS and BFI.
Therefore, when the noncommercial permit was issued to CECOS in December *149 1991, the source of waste to be disposed via the disposal well was restricted to wastes generated at facilities owned or operated by CECOS International, Inc., the permit applicant and current owner/operator of the injection well. Disposal of waste generated by its parent company or subsidiaries of its parent company, other than CECOS International, Inc., was prohibited.
As to the appropriateness of the approved permit modification request, this Office found the request to be fully within the spirit of the original repermit application as to the source of waste to be disposed and within the bounds of the LaDNR regulations. Whereas a fully noncommercial permit could not be bestowed upon the facility under the waste source provisions being sought in the original 1991 repermit application by CECOS, this Office could see no reason why the requested modification should not be granted as a commercial hazardous waste well permit with the waste source restrictions imposed as stated in Item No. 2 under the heading ‘ORDER’ of the approved Supplemental Order.
[ nConservation submits that it found as a fact that “new information” was provided by CECOS which justified modification of the permit. The facts relied on by appellants as being supportive of this factual finding, which appear in the record, can be summarized as follows: In 1991, CECOS requested that the status of its well be changed from commercial to non-commercial; however, it also requested authorization to continue disposing of wastes generated off-site by other CECOS facilities and subsidiaries of its parent company. The original draft issued by the Commissioner shows that apparently the agency believed that it was permissible for CECOS to dispose of its affiliates’ waste under a noncommercial permit, as the draft order changed the status of the well, but authorized CECOS to dispose of its affiliates’ waste. However, after the public expressed opinion that under Louisiana law, noncommercial operators could not dispose of any wastes generated by any other entity than the permit holder, including affiliates of the permit holder, Conservation changed its earlier position and issued the permit which restricted CE-COS to disposing of only CECOS generated waste. Soon thereafter, CECOS informed Conservation that it never would have requested a change in the status of its well if it had known that it would be precluded from disposing of its affiliates’ wastes. Thus, CE-COS’ application for a permit modification formally requested that the well’s classification revert back to its former commercial status and that the restriction on disposal of its affiliates’ waste be deleted. In essence, appellants urge that “new information” was supplied by CECOS to Conservation so as to justify permit modification under Section 213 when CECOS informed Conservation that it wished to dispose of its affiliates’ waste, and that it would not have sought to change its classification from commercial to noncommercial if it had known that it would be precluded from disposing of its affiliates’ waste.
CLEAN contends that the “new information” test has not been met in this case because the “information” relied on by CE-COS as purportedly justifying the modification was available to [^Conservation at the time the permit was issued. Principally, Conservation was aware at the time of issuance of the original permit that CECOS wanted to dispose of wastes generated off-site by CECOS’ affiliates. Further, CLEAN contends that CECOS is attempting to equate “ignorance of the law” with “new information” by complaining that it would not have applied for a noncommercial permit if it would have known how Conservation would interpret the law. CLEAN submits that the law does not allow a permittee’s “bad judgment” or “ignorance of the law” to serve as cause for permit modification.
■ In Matter of Recovery I, Inc., 635 So.2d at 696, this court recognized that considerable weight should be afforded to an administrative agency’s construction of a statutory scheme that it is entrusted to administer. This court stated that the same deferential standard of judicial review must be accorded to an administrative agency regarding the construction and interpretation of rules and regulations under its authority. Id. In Recovery I, this court held that an administra *150 tive agency’s interpretations and construction of the rules and regulations it promulgates must stand unless they are arbitrary, capricious or manifestly contrary to the rules and regulations. Id.
In light of the foregoing standard of judicial review, we are not asked to determine whether we believe that CECOS supplied Conservation with “new information” justifying modification of the permit. Rather, we must decide whether Conservation’s determination that CECOS supplied it with “new information” justifying modification of the permit under Conservation’s own regulation was arbitrary, capricious, or manifestly contrary to LAC 43:XVII.213. The test for determining whether an action was arbitrary or capricious is whether the action taken was “without reason.” Recovery I, 635 So.2d at 699-700.
Conservation found as a fact that CECOS supplied the agency with “new information” sufficient to modify the permit when it informed Conservation that it would not have requested to change the status of its well to noncommercial had it known that it could lianot dispose of its affiliates’ waste therein, and requested the modification to revert back to its original commercial classification. After a thorough review of the record, we cannot say that Conservation’s construction of its own rules as authorizing the permit modification was “without reason” or manifestly contrary to LAC 43:XVTI.213. Accordingly, we find that Conservation did have cause under LAC 43:XVTL213C(l)(b) to modify the permit, and the trial court erred in ruling otherwise.[2]
NOTICE
Lastly, we address CLEAN’S argument that the public notice of the proposed permit modification issued by Conservation was procedurally deficient because it did not contain certain information required by Conservation’s own rules and regulations governing public notice of permit actions contained in LAC 43:XVII.211. The regulations provide that all public notices issued thereunder “shall contain the following information ... the list of waste and volumes proposed to be injected.” LAC 43:XVII.211E(4)(a)(vi). Section 211D(2)(b) states that the fact sheet “shall include, when applicable ... [t]he type and quantity of wastes, fluids, or pollutants which are proposed to be or are being injected.”
The public notice issued by Conservation on the proposed modification apprised the public that if the proposed modification were granted, CECOS would revert back to being a Class-I commercial hazardous waste injection well operator. In the fact sheet, the public was notified that the modification was sought to allow CECOS to dispose of wastes generated by facilities of BFI and its subsidiaries. The fact sheet set forth that the primary source of waste to be disposed of would be BFI, CECOS and other BFI subsidiary generated waste.
CLEAN asserts that these notices failed to comply with LAC 43:XVU.211’s mandatory content requirements because they did not | Mcontain a listing of the specific wastes to be injected, or the quantities of such waste. Specifically, CLEAN charges that the documents did not advise the public that CECOS would be allowed to dispose of hazardous wastes generated in BFI Superfund cleanups, nor did they state that CECOS could dispose of nonhazardous waste from any entity. By fading to provide this crucial information, CLEAN urges, Conservation failed to give it sufficient notice to enable it to clearly understand the nature and magnitude of the proposed modification. CLEAN contends that the omission of this information deprived CLEAN and other members of the public of the opportunity to evaluate the probable impact of the modification, and was legally ineffective.
The record reflects that at the hearing on the proposed modification, Ms. Peggy Frank-land, who represented CLEAN, stated:
On March 17, 1992, CECOS requested a modification to the injection well permit which would change the status back to *151 Class I commercial for the disposal of hazardous and nonhazardous waste. CECOS has now decided they want to dispose of CECOS waste, BFI waste, BFI subsidiary waste, Superfund, and CERCLA waste from all sites where BFI or its subsidiaries are potentially responsible parties and nonhazardous waste from commercial — excuse me — commercial customers.
Please, I ask the Conservation Office, do not modify the permit and change the status back to commercial. This injection well should remain noncommercial. As you all know, and everybody in this room knows, the compliance history of the BFI/CECOS facility in Willow Springs, it — the history demonstrates that this facility should not ever again be given the status of a commercial facility. I beg you to please say no to the modification request. Thank you.
La.R.S. 30:12(5), governing court review of Conservation actions, bars this court from reversing or modifying action taken by Conservation unless the substantial rights of the challenger have been prejudiced. CLEAN must demonstrate that its right to be heard was prejudiced by Conservation’s omission of the information upon which its challenge is based, namely, that CECOS would be allowed to dispose of wastes generated as a result of BFI’s involvement in Superfund clean-ups and nonhazardous waste from any entity. However, as Ms. Frankland’s address to Conservation at the public hearing makes it clear, CLEAN’s members were aware of the probable impact of the proposed modification, and knew specifically hsthat CECOS wished to dispose of the BFI Superfund waste and nonhazardous waste at its facility. Because CLEAN had actual notice of the alleged procedural deficiencies, it cannot show that it was prejudiced by the omission thereof. Furthermore, we find the notice given by Conservation adequately apprised CLEAN of the substance of the proposed modification, and any technical procedural deficiencies in that notice did not prejudice CLEAN’s right to be heard on the proposed modification, and were merely harmless. Accordingly, since CLEAN cannot establish that it was prejudiced by the alleged notice irregularities, under La.R.S. 30:12, CLEAN’s notice challenge must fail.
CONCLUSION
Based on the foregoing, the judgment appealed from is reversed. CECOS and Conservation’s motions for summary judgment are hereby granted and Supplement to Order No. 91-25 WD is reinstated. Ml costs of this appeal are assessed to appellee, Calcasieu League for Environmental Action Now.
REVERSED AND RENDERED.
CARTER, J., concurs in part and dissents in part for reasons assigned.

. CECOS submits that during “settlement negotiations" with Conservation, CECOS offered to revert back to its previous commercial classification if such was necessary to obtain authorization to dispose of wastes generated by BFI and its subsidiaries. According to CECOS’ brief, Conservation informed CECOS that it should file a request for a permit modification to have the well revert to its prior classification, because as the owner of a commercial facility, there would be no restrictions on the disposal of hazardous wastes generated by CECOS’ affiliates. These settlement discussions are not part of the record in this appeal.

. Because of our ruling that Conservation did not err in finding one of the enumerated causes applicable to the facts of this case, we need not address the parties’ arguments with respect to whether the cause enumeration in Section 213 is exclusive or merely illustrative.