PARRO, J.
|sThis is an appeal by Louisiana Health Service and Indemnity Company, Inc., d/b/a Blue Cross Blue Shield of Louisiana (Blue Cross) from a judgment of the district court, acting in an appellate capacity, reversing the final decision of the Commissioner of Administration, which had upheld the validity of a contract awarded by the Office of Group Benefits to Blue Cross. For the reasons that follow, we reverse the judgment of the district court.
FACTUAL AND PROCEDURAL HISTORY
In October of 2009, the State of Louisiana through the Division of Administration, Office of Group Benefits (OGB), issued notices of intent to contract (NICs) for administrative services only (ASO) for health benefit plans for state employees, dependents, and retirees. Since the existing contracts for the administration of the Health Maintenance Organization (HMO) plan by Humana Insurance Company (Hu-mana) and the Exclusive Provider Organization (EPO) plan by United Healthcare Insurance Company (UHC) would expire on June 30, 2010, OGB solicited proposals for two new contracts to become effective on July 1,201o.[1]
OGB received three proposals in response to the HMO NIC. Responders were Humana, UHC, and Blue Cross. OGB also received three proposals in response to the EPO NIC. Responders were Blue Cross, UHC, and FARA Benefit Services, Inc. (FARA).
The proposals were evaluated and scored by OGB and its actuarial consultants, Buck Consultants, Inc. (Buck Consultants). Based on the points awarded to Blue Cross in the evaluation and scoring process, Buck Consultants recommended that Blue Cross be awarded the contract for the HMO plan. Blue |4Cross’s proposal for the EPO plan also received the highest scores in the evaluation and scoring process. According to OGB, at that stage of the review process, OGB reached the conclusion that Blue Cross’s proposals under both NICs offered the same quality of health care providers and the same cost of coverage, thereby eliminating the need for two contracts. Moreover, although OGB concluded that Blue Cross was entitled to be awarded both contracts since Blue Cross received the highest scores on both proposals, OGB further concluded that one contract would be less costly to the state. Thus, it made the decision to withdraw the EPO NIC and to award the HMO contract to Blue Cross. OGB announced the award of the HMO contract to Blue Cross on its website and by notification letter to the other proposers.
Humana and UHC filed protests and supplemental protests with OGB in which they claimed that they were prejudiced by a flawed procurement process.[2] They al *1098 leged that Blue Cross’s proposal for the HMO plan included a nationwide network that violated the specifications contained in the HMO NIC, which sought a statewide network only.
Humana and UHC argued that, in the announcement of the award, OGB acknowledged that Blue Cross’s HMO proposal included a nationwide network. Humana and UHC further alleged that, either the nationwide network offered by Blue Cross in response to the HMO NIC violated the specifications contained in the NIC or OGB changed the HMO NIC specifications after the NIC was issued and failed to notify other proposers. They also alleged that they were prejudiced by OGB’s actions, which denied them the opportunity to submit comparable bids.
|5In its denial of Humana and UHC’s protests, OGB stated that the proposal by Blue Cross conformed to the specifications contained in the HMO NIC and was evaluated and scored based on those specifications. OGB further stated that Blue Cross did not offer a nationwide network in its HMO proposal and that a nationwide network was not used in evaluating Blue Cross’s HMO proposal. OGB concluded that Humana and UHC were not prejudiced, because the decision to merge OGB’s HMO and EPO plans was made only after Blue Cross scored the highest on both proposals.
UHC and Humana then appealed OGB’s decisions, which denied their protests, to the Division of Administration (DOA), through the Commissioner of Administration. DOA affirmed the award and OGB’s decisions denying the protests. DOA acknowledged that the website announcement and the notification letter stated that the HMO and EPO plans were being consolidated because OGB could provide, through its HMO plan, a nationwide network of health care providers. DOA denied that there was any prejudice to Hu-mana or UHC, because Blue Cross scored the highest on both proposals, which were evaluated and scored independently. DOA stated that OGB’s intent was not to provide a nationwide network in its HMO plan, but stated that there was no prohibition against proposers using a nationwide network for out-of-state services.
UHC and Humana separately filed petitions for judicial review of the DOA’s decision with the Nineteenth Judicial District Court. The two suits were consolidated, and Blue Cross was permitted to intervene.
After a hearing, the district court remanded the case to OGB for consideration of additional evidence, in accordance with LSA-R.S. 49:964(E). Subsequently, OGB issued its second decision in which it affirmed the award of | fithe contract to Blue Cross.[3] Humana and UHC appealed to the DOA, which again affirmed the decision of OGB.[4] Humana and UHC filed another petition for judicial review with the Nineteenth Judicial District Court and, after additional briefing, the district court issued oral reasons for judgment on December 15, 2010. The district court reversed the decision of DOA, which had affirmed OGB’s decision, and found that the award of the HMO contract to Blue *1099 Cross “was made upon unlawful or improper procedure.” See LSA-R.S. 49:964(G)(3). Judgment was signed accordingly. It is from this judgment that Blue Cross, DOA, and OGB appealed to this court.[5]
STANDARD OF REVIEW
Under the facts of this case, a party who is aggrieved by an award of a contract must submit a protest with OGB, at which time OGB must notify the Office of Contractual Review that a protest has been lodged. See LAC 34:V.145(A)(8); LSA-R.S. 39:1490(B)(5). If the aggrieved party is not satisfied with OGB’s decision, then that party may appeal the decision, in writing, to the Commissioner of Administration. See LAC 34:V.145(A)(11); LSA-R.S. 39:1490(B)(5).
The Commissioner must then render a decision in writing, which decision is final. LAC 34:V.145(A)(11). The aggrieved party may seek review of an adverse decision by filing a petition for judicial review with the Nineteenth Judicial District Court. See LSA-R.S. 39:1526(A).
|7In reviewing the decision of OGB in this case, the district court applied the standard of review set forth in LSA-R.S. 49:964(G); however, LSA-R.S. 49:964(A)(1) makes clear that it only applies to “an adjudication.”[6] In this case, there was no “adjudication”; thus, the standard of review set forth in LSA-R.S. 49:964(G) does not, per se, apply. However, as the Louisiana Supreme Court noted in Save Ourselves, Inc. v. Louisiana Environmental Control Com’n, 452 So.2d 1152, 1158 (La.1984), there is no substantial difference between the standards of review provided by LSA-R.S.49:964(G) and the supreme court’s jurisprudential rules pertaining to judicial review. The supreme court further noted that the Administrative Procedure Act (APA) statutory scheme promoted clarity of analysis and accordingly, in the instant case, we will apply the standards of judicial review provided by LSA-R.S. 49:964(G) by analogy.[7] See id.
The general principle governing the standard of review to be used when reviewing the findings of an administrative agency is that, if the evidence, as reasonably interpreted, supports the agency’s determinations, then the agency’s decisions are accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action was arbitrary or capricious. Summers v. Sutton, 428 So.2d 1121, 1129 (La.App. 1st Cir.1983). An administrator, vested with authority to exercise discre *1100 tion, is free to exercise |sthat discretion as he or she sees fit as long as the exercise of that discretion is rational and not arbitrary or capricious. Id. The agency’s discretion must be exercised in a fair and legal manner and not arbitrarily. The test for determining whether an action was arbitrary or capricious is whether the action taken was without reason. Calcasieu League for Environmental Action Now v. Thompson, 93-1978 (La.App. 1st Cir.7/14/95), 661 So.2d 143, 150, writ denied, 95-2495 (La.12/15/95), 664 So.2d 459.
ANALYSIS
OGB is the state agency within the Office of the Governor, Division of Administration, vested with the responsibility to establish and administer group benefit plans for state employees, dependents, and retirees.[8] OGB works under the direction of the Commissioner of Administration to establish these benefit plans.[9] OGB’s enabling legislation states that OGB has the power and duty to negotiate contracts for health benefit plans under the provisions of LSA-R.S. 39:1481, et seq. in the best interests of the office and its covered persons. See LSA-R.S.42:802(B)(8)(a).
In this case, OGB drafted and issued two separate NICs in order to procure two contracts for the administration of two of its health benefit plans. As required by law, the HMO NIC clearly stated the relative importance of price and other evaluation factors and clearly defined the tasks to be performed under the contract and the criteria to be used in evaluating the proposals.[10] The two | ¡primary components of the evaluation were the qualitative/network assessment and the cost of coverage. Each of the primary components was worth up to 500 points, or 50% of a proposer’s total potential score. The maximum potential score for a proposal was 1,000 points. The cost of coverage component had two elements: (1) the expected cost of claims (based on a repricing exercise) and (2) the administrative service fees. The proposer with the lowest total cost would be awarded 500 points for this component and the remaining proposers would be awarded points based on a formula.
The HMO plan was designed for members who would seek health care primarily in the state of Louisiana. The HMO NIC required proposers to submit a statewide network of providers to insure complete statewide coverage. The HMO NIC stated that OGB would not accept proposals for individual or grouped regions, making it clear that OGB sought coverage in every area of the state. The HMO NIC also stated that OGB sought to contract with a third-party administrator, insurer, or health maintenance organization, for administrative services only, to administer a self-insured HMO Plan on a statewide basis. The HMO NIC also required proposers to provide access to health care providers out of state. It stated: “Contractor must be capable of providing all services and benefits set forth in the Plan of Benefits (exhibit 1).” The “Plan of Benefits” is summarized in a chart which forms part of the HMO NIC. The chart identifies cov *1101 ered benefits in-network (statewide) and covered benefits out-of-network, the latter of which is broken down into two categories: (1) members who reside in Louisiana and (2) members who reside outside of Louisiana. The HMO NIC clearly requires proposers to provide access to out-of-state health care providers in their HMO proposals. OGB recognized that, although most HMO plan members would seek health care within the state, some members would need care while outside the state and some would be referred to out-of-state health care | ^providers for specialized care. Accordingly, the HMO plan and its corresponding NIC sought health care providers both in-state and out-of-state.
The HMO NIC required proposers to submit a statewide network of participating providers, which would be evaluated and scored for the quality of network. It also required proposers to reprice in-state claims using their in-state network. However, proposers were required to reprice out-of-state claims as well. The HMO NIC does not direct proposers to use a specific network to reprice out-of-state claims, nor does it prohibit the use of a specific network for that purpose.
The HMO proposals submitted by Hu-mana, UHC, and Blue Cross were evaluated and scored by OGB and Buck Consultants in accordance with the criteria set forth in the HMO NIC. OGB and Buck Consultants concluded that all three proposals complied with the HMO NIC. All three proposers submitted statewide networks to be evaluated and scored for quality of network, and they repriced in-state claims using their statewide network. According to OGB, all proposers also repriced out-of-state claims using discounts for out-of-state health care providers.[11] According to Buck Consultants, Blue Cross’s HMO proposal received the highest score as to the quality of its statewide network and for the lowest cost of coverage in repricing both in-state and out-of-state claims, combined with administrative fees.
OGB also received three proposals in response to the EPO NIC, which sought an ASO contract that would provide members with access to nationwide networks of health care providers. Proposers were to submit their best statewide network in Louisiana and their best out-of-state network, offering discounted rates outside of Louisiana. Proposers were Blue Cross, UHC, and FARA.
| ii As required by law, the EPO NIC also clearly stated the relative importance of price and other evaluation factors and clearly defined the tasks to be performed under the contract and the criteria to be used in evaluating the proposals. See LSA-R.S. 39:1508(B). The evaluation criteria set forth in the EPO NIC was the same as the criteria contained in the HMO NIC. However, under the EPO NIC, the qualitative/network assessment was based on a nationwide network, in addition to the statewide network, whereas under the HMO NIC, the qualitative/network assessment was based only on the statewide network.
After evaluating and scoring the EPO proposals, Buck Consultants reported to OGB that Blue Cross’s EPO proposal achieved the highest total score. OGB then recognized that the member benefits available under the Blue Cross proposals for the HMO plan and EPO plan offered the identical quality of network and cost of *1102 coverage. Blue Cross’s proposal of the statewide network for the HMO plan, along with access to Blue - Cross’s nationwide network for out-of-state claims, provided the same available health care providers and pricing as the Blue Cross EPO proposal did. Upon consideration of the fact that Blue Cross earned the highest score on both proposals, OGB concluded that either one of Blue Cross’s proposals eliminated the need to maintain two separate health benefit plans. Since maintaining two plans would cause the state to incur significantly higher administrative costs, OGB decided that it was in the best interest of the state to award only one contract. OGB then announced that the EPO NIC would be withdrawn and that Blue Cross was to be awarded the HMO contract.
In protesting this award, Humana’s and UHC’s primary complaint was that the HMO NIC sought “a statewide network only” and that the proposal submitted by Blue Cross utilized contracted discounts with out-of-state health care |12providers when it performed the repricing exercise for out-of-state claims. Humana argued that the use of these contracted discounts to reprice out-of-state claims constituted use of a nationwide network, which it believed was prohibited by the HMO NIC. On the other hand, UHC stated, in a reply brief filed in the district court, that it used a nationwide network to reprice some out-of-state claims. Nevertheless, Humana argued that it did not use a nationwide network to reprice the out-of-state claims, because it believed that the HMO NIC sought a statewide network only. Huma-na argued that OGB did not have competitive cost proposals before it since Humana refrained from offering its best contracted discounts for out-of-state claims.
While Humana may have refrained from utilizing a nationwide network to reprice out-of-state claims in its HMO proposal, we find that the language of the HMO NIC does not prohibit the use of a nationwide network for that purpose. Further, since the state sought contracts that would be in the best interests of the state and participating plan members, proposers were aware of the importance of offering the broadest statewide network at the best possible price, along with the best possible price for health care services out-of-state.
 The decision as to whether a proposal meets the criteria of a NIC or RFP is within the discretion of the agency. OGB and its evaluation committee had discretion to choose the responsible offerer whose proposal was “most advantageous to the state, taking into consideration review of price and the evaluation factors set forth” in the NIC. See Fleetcor Technologies Operating Co., LLC v. State ex rel. Div. of Admin., Office of State Purchasing, 09-0976 (La.App. 1st Cir.12/23/09), 30 So.3d 102, 111. OGB and the evaluation committee concluded that all three proposals received in response to the HMO 11SNIC were responsive to the HMO NIC. We find that the agency did not abuse its discretion in arriving at this conclusion.[12]
We find no abuse of discretion by OGB in its decision to cancel the EPO NTC under these circumstances. OGB followed the appropriate procedure in issuing the two separate NICs and in receiving proposals and evaluating and scoring each based on specifications in the respective *1103 NICs. All proposers had equal opportunity to offer competitive proposals based on the language contained in the NICs. OGB had a reasonable basis to conclude that all three proposals submitted in response to the HMO NIC met the specifications of the NIC, and, based on fair and equitable evaluations of all proposals under each NIC, Blue Cross achieved the highest scores on both. At that point, OGB could have awarded both contracts to Blue Cross. It decided not to do so in order to avoid subjecting the state to unnecessary administrative expenses. We conclude that OGB had the discretion to withdraw the EPO NIC and award only one contract, based on its conclusion that such action was in the best interest of the state.[13] Accordingly, the district court erred when it found that the administrative decision was made upon unlawful procedure.
Blue Cross argued that competitive “bidding” is not required for a contract for the administration of health care benefit plans, because it is a contract for “professional services,” which does not require competitive bidding or competitive negotiation under LSA-R.S. 39:1494. We disagree. A contract for administrative services only for the state’s health benefit plans is in the nature of a contract for consulting services as defined in LSA-R.S. 39:1484(A)(4). | ^Louisiana Revised Statute 39:1496(B) requires that contracts for consulting services that have a total maximum amount of compensation of fifty thousand dollars or more shall be awarded through a request-for-proposal process. The process utilized by OGB in search of an administrator for its self-insured health benefit plans was a competitive negotiation and not a competitive bid process. Cf. LSA-R.S. 39:1484(A)(2) and (A)(3). The statutory scheme gives OGB the discretion to negotiate contracts that are in the best interest of the state. While OGB’s authority is not unlimited, its decision should not be disturbed absent a finding that it was arbitrary or capricious.
CONCLUSION
Accordingly, having thoroughly reviewed the entire record in the matter before us and considering the arguments raised, we reverse the judgment of the district court on its judicial review of this administrative decision. All costs of this appeal are cast to Humana Insurance Company.
REVERSED.
HIGGINBOTHAM, J„ concurs with reasons.

. According to OGB's former Chief Executive Officer, Tommy D. Teague, the HMO plan was designed for members who would seek health care primarily in the state of Louisiana through a statewide network of health care providers, but the plan also required access to health care providers out of state. The EPO plan was designed for members who would need more access to health care out of state; therefore, it required a nationwide network of health care providers.

. Many issues were protested, for example, Humana and UHC alleged that OGB failed to reject Blue Cross’s proposals as non-conforming, failed to apply a standardized methodology for the repricing exercise, violated LSA-R.S. 39:1504 in cancelling the EPO NIC while merging services sought into the HMO contract, negligently disclosed Humana's proprietary information on contracted discounts to competitors, made an award that was not in the best interest of the state, failed to find that *1098 Blue Cross was not a qualified proposer, and others.

. After considering supplemental evidence and argument, OGB stated that its decision that Blue Cross's HMO proposal was responsive to the HMO NIC, that it complied with the specifications of the NIC, and that it was scored within the stated criteria of the NIC remained unchanged.

. The new Commissioner of Administration, Paul Rainwater, issued the second opinion of DOA.

. After the appeals were lodged in this court, OGB and DOA filed motions to dismiss their appeals, which were granted on February 8, 2012. UHC did not file a brief.

. For purposes of the Administrative Procedure Act (APA), "adjudication” means an agency proceeding that results in a disposition that is required to be made by constitution or statute after notice is given and a hearing is held. Unless some statute or the constitution requires a hearing and notice, an agency action is not an adjudication for purposes of the APA. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Bd., 01-0185 (La. 10/16/01), 797 So.2d 656, 662 n. 7.

.Louisiana Revised Statute 49:964(G) states that a district court may reverse or modify the agency decision if it finds that substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

. See LSA-R.S. 42:801, et seq.

. LSA-R.S. 42:802(B)(6).

. Louisiana Revised Statute 39:1503 governs the process from the issuing of NICs or Request for Proposals (RFPs) through the awarding of contracts and, in pertinent part, states:
B. The Request for Proposals shall indicate the relative importance of price and other evaluation factors, shall clearly define the tasks to be performed under the contract, the criteria to be used in evaluating the proposals and the time frames within which the work must be completed.

. It is not clear whether all proposers used nationwide networks to reprice out-of-state claims under the HMO. However, it is clear that all three proposers engaged in the repricing exercise as required and that each offered discounts for the out-of-state claims.

. After the NICs were issued and proposers advised OGB of their interest in submitting a proposal, there was a period during which questions could be submitted to OGB. Answers to all questions were provided to all proposers by OGB within seven days of receipt of questions. The record does not reflect that any proposer asked whether the HMO NIC prohibited the use of a nationwide network for repricing out-of-state claims.

. Louisiana Revised Statute 39:1504 allows an RFP or NIC to be cancelled or all proposals rejected if it is determined, based on reasons provided in writing, that such action is taken in the best interest of the state.