HIGGINBOTHAM, J.
laThis is an appeal by a rejected proposer, Catamaran PBM of Maryland, Inc. (Catamaran), from a judgment of the district court, acting in an appellate capacity. The judgment affirmed the final decision of the State of Louisiana Commissioner of Administration (Commissioner), which upheld the award of a state contract for pharmacy-benefits-managemeht services by the State of Louisiana through the Division of Administration, Office of Group Benefits (OGB), to Medlmpact Healthcare Systems, Inc. (Medlmpact).
FACTS AND PROCEDURAL BACKGROUND
OGB is the state agency within the Division of Administration that is responsible for establishing and administering group health benefit and related plans for state employees, dependents, and retirees.[1] Pursuant to enabling legislation in the Professional Services Procurement Code, now known as the Louisiana Procurement Code, OGB has the power and the duty to negotiate contracts for health benefit plans that are in the best interests of the state and its covered persons.[2] In providing the health benefit plans, OGB is also responsible for procuring prescription benefits coverage.[3]
On May 29, 2013, OGB issued a notice of intent to contract (NIC) for a three-year term (January 1, 2014 through December 31, 2016) regarding pharmacy-benefits-management (pharmacy) services for OGB’s group health benefit plans for Jétate employees, dependents, and retirees, including Medicare/Medicaid services.[4] *686 At the time of the NIC, and since 2004, Catamaran was the incumbent provider of OGB’s pharmacy services, as well as a participant in a three-way contract with OGB and Express Scripts (ESI) for the Medicare Employer Group Waiver Plan (EGWP) services; however, those contracts were set to expire on December 81, 2013. OGB received several proposals in response to its competitive pharmacy services NIC. Proposers were Catamaran, CVS Caremark, ESI, and Medlmpact.[5]
At issue are two pertinent requirements in the NIC: (1) that the primary proposer of the pharmacy services be an approved Center for Medicare/Medicaid Services (CMS)-contracted prescription drug plan (plan) sponsor in accordance with CMS regulations; and (2) that the EGWP plan could not be provided by or through a subcontractor. During the competitive negotiation process, the proposers to the NIC were invited to submit questions to OGB in a formal, written Questions and Answers phase that was available to all proposers prior to the submission of their proposals.
Some of the questions posed by the proposers pertained to clarification about the EGWP plan restriction on subcontractors. OGB answered the submitted questions in writing. OGB’s answers clarified the initial NIC by stating that OGB would accept a proposal from a primary proposer to provide the EGWP plan services through an affiliate arrangement if the primary proposer’s affiliated company was under “common control” with the primary proposer. OGB specifically answered |4that it understood and accepted that “certain component functions ... may be subcontracted. Not acceptable is a proposal under which the primary provider of the EGWP [plan] services is an entity not affiliated (under common control) with the primary proposer.” OGB further clarified that “the primary proposer is allowed to offer the EGWP plan through a subsidiary or business affiliate arrangement.” No proposer commented on or filed a protest regarding the criteria of the NIC as modified by the Questions and Answers phase.
When all of the proposals were submitted, Medlmpact’s proposal indicated that it was the primary proposer and that Med-Generations, a wholly-owned subsidiary of Medlmpact, had a CMS sponsor agreement with Stonebridge Life Insurance Company (Stonebridge), but that MedGen-erations would administer the EGWP plan for Medlmpact. Interviews with each proposer were conducted by OGB through an Evaluation Committee for the Division of Administration, along with the assistance of OGB’s actuarial consultant, Buck Consultants, Inc. (Buck), in order to further clarify all of the proposals. The proposals for finalists, Catamaran, ESI, and Medlm-pact, were then evaluated and uniformly scored by OGB, through the Evaluation Committee, and Buck. Based on the points awarded to Medlmpact during the evaluation and scoring process, Buck recommended that the contract for OGB’s pharmacy services be awarded to Medlm-pact. The Evaluation Committee issued a report and recommendation, adopting Buck’s report as its own. Thereafter, *687 OGB announced the award of the contract to Medlmpact.
Catamaran filed a timely protest with OGB on the award of the contract. Catamaran’s main argument was that Medlm-pact’s proposal was non-responsive since it revealed that Medlmpact’s EGWP plan would be provided through an unaffiliated subcontractor, Stonebridge. Catamaran also argued that OGB failed to make a statutorily required responsibility determination regarding Medlmpact prior | fito the award of the contract, although Catamaran did not insinuate that Medlmpact was in any way an irresponsible proposer. OGB denied Catamaran’s protest, finding that Medlmpact’s proposal conformed to the specifications of the NIC as modified by the written Questions and Answers, and that the proposal was fairly evaluated and scored based on those specifications. Catamaran then appealed OGB’s decision denying its protest to the Division of Administration, through the Commissioner. The Commissioner affirmed the award of the contract to Medlmpact for OGB’s pharmacy services, as well as OGB’s decision denying Catamaran’s protest.
After exhausting its administrative remedies, Catamaran filed a petition for judicial review of the Commissioner’s decision with the Nineteenth Judicial District Court on November 27, 2013. Medlmpact was permitted to intervene in the lawsuit on December 12, 2013.[6] After a hearing on August 18, 2014, the district court, in its appellate capacity, affirmed the decision of the Commissioner, which had affirmed OGB’s denial of Catamaran’s protest and the award of OGB’s pharmacy services contract to Medlmpact. The district court ruled that the determinations of OGB and the Commissioner were not arbitrary or capricious. After adopting OGB’s pre-hearing memorandum as its own written reasons for judgment, the district court signed a final judgment on September 10, 2014. It is from that judgment that Catamaran appeals to this court.
STANDARD OF REVIEW
Judicial review of the decision of an administrative agency is an exercise of a court’s appellate jurisdiction pursuant to La. Const. Art. V, § 16(B), which provides I r,that “[a] district court shall have appellate jurisdiction as provided by law.”[7] In reviewing the decision of OGB and the Commissioner in this case, the district court applied the standard of review set forth in the Louisiana Administrative Procedure Act in La. R.S. 49:964(G). Louisiana Revised Statute 49:964(G) states that a district court may reverse or modify the agency decision if it finds that substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are; (1) in violation of constitutional or statutory provisions; (2) in excess of the statuto *688 ry authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. See United Healthcare Ins. Co. v. State ex rel. Div. of Admin., 2011-1398 (La.App. 1st Cir.9/28/12), 103 So.3d 1095, 1099, n. 7.
As we set forth in United Healthcare, 103 So.3d at 1099, it is proper to apply La. R.S. 49:964(G) by analogy in these types of cases since there was no “adjudication” by a state agency after notice and a hearing. The general principle governing the standard of review to be used when reviewing the findings of an administrative agency is that, if the evidence, as reasonably interpreted, supports the agency’s determinations, then the agency’s decisions are accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action was arbitrary or capricious. Id. Further, an administrator vested with authority to exercise discretion, is free to exercise that discretion as he or she sees fit as long as the exercise of that discretion is rational and not arbitrary |7or capricious. Id., 103 So.3d at 1099-1100. The agency’s discretion must be exercised in a fair and legal manner and not arbitrarily. The test for determining whether an action was arbitrary or eapri-cious is whether the action taken was without reason. Id., 103 So.3d at 1100.
LAW AND ANALYSIS
The Louisiana Procurement Code (LPC),[8] with certain exceptions, governs contracts entered into by the State of Louisiana for the procurement of supplies, services or major repairs. Willows v. State, Dept. of Health & Hospitals, 2008-2357 (La.5/5/09), 15 So.3d 56, 59. As required by the LPC, OGB drafted and issued a NIC that clearly stated its purpose and expectations (to procure a contract regarding pharmacy services for OGB’s group health benefit plans), the proposed three-year term, the evaluation process and scoring criteria (including the possibility of interviews and written discussions), and the requirements for all proposers responding to the NIC (including the time frame for completion). Former La. R.S. 39:1503 (now cited as La. R.S. 39:1595) governs the process for competitive sealed proposals, from the issuing of a NIC through the awarding of the contract.
As we stated in United Healthcare, 103 So.3d at 1103, a contract for administrative services for the state’s group health benefit plans is in the nature of a contract for consulting services, which in this instance is required to be awarded through a request-for-proposal process. See former La. R.S. 39:1484(A)(4) and former La. R.S. 39:1496(B) (now cited as La. R.S. 39:1556(10) and La. R.S. |R39:1621(B) re *689 spectively).. The NIC process utilized by OGB in this case was a competitive negotiation. See former La. R.S. 39:1484(A)(3) (now cited as La. R.S.[1]39:1556(8)). Inherent in this statutory scheme is OGB’s discretion to negotiate contracts that are in the best interest of the state of Louisiana. See United Healthcare, 103 So.3d at 1103.
The decision as to whether a proposal meets the criteria of a NIC is within the discretion of the agency. OGB and its Evaluation Committee had discretion to choose the responsible proposer whose proposal was most advantageous to the state, taking into consideration the requirements of the NIC. See former La. R.S. 39:1593(C)(2)(d)(i) (now cited as La. R.S. 39:1595(B)(7)(a)). See also United Healthcare, 103 So.3d at 1102; Fleetcor Technologies Operating Co., LLC v. State ex rel. Div. of Admin., Office of State Purchasing, 2009-0976 (La.App. 1st Cir.12/23/09), 30 So.3d 102, 111. Whilé OGB determined that three of the four proposals received in response to the NIC were submitted by responsible proposers and the proposals were considered to be responsive to the requirements of the NIC, OGB ultimately decided that Medlm-pact’s proposal was the most advantageous to the state. We find no abuse of discretion by OGB in its decision.
The Question and Answer phase of the negotiation process was available to all of the responsible proposers in this case. That phase clarified and modified the initial NIC’s requirement regarding the subcontracting of EGWP plan services for all proposers. OGB recognized and firmly stated its position that proposals involving a primary provider of the EGWP plan services must be affiliated — or under common control — with the primary proposer. If no affiliation, then the proposal would not be acceptable. Thus, it is apparent that through the negotiation process of the Questions and Answers phase, OGB relaxed its initial blanket rejection of subcontractor arrangements for the EGWP plan. All . proposers were aware of the ^modification provided in the written Questions and Answers where OGB allowed the primary proposer to offer the EGWP plan through an affiliate arrangement. The record reveals that Medlm-pact’s proposal involved offering the EGWP plan through an affiliate arrangement with its wholly-owned subsidiary, MedGenerations. While MedGenerations had a CMS sponsor agreement with Stone-bridge, OGB was satisfied that MedGener-ations was the primary provider under Medlmpact’s proposal and MedGenera-tions would be administering the EGWP plan for Medlmpact. The record reasonably supports OGB’s determination.
As for Catamaran’s argument that OGB failed to determine that Medlmpact was a responsible proposer before making the award, we disagree. The record reveals that OGB and the Evaluation Committee had access to the financial statements, and other pertinent information required by LAC 34:V.136 (now cited as LAC 34:V.2536), for all of the proposers. OGB considered the information available to it and determined that three of the four proposers that were reasonably susceptible of being selected for the award of the NIC (Medlmpact, Catamaran, and ESI) were all responsible proposers. Thus, OGB considered all three responsible proposers as finalists in the competitive negotiated process. Medlmpact was ultimately offered the contract because it was awarded the most points in the evaluation and uniform scoring process. There is no basis in the record to support Catamaran’s contention that OGB failed to evaluate Medlmpact’s responsibility. Accordingly, we find no merit in Catamaran’s assigned error re *690 garding OGB’s responsibility determination.
OGB is afforded great deference in decisions made within its scope of experience, expertise, and reasonable perceptions. See Executone of Central Louisiana, Inc. v. Hospital Service Dist. No. 1 of Tangipahoa Parish, 99-2819 (La.App. 1st Cir.5/11/01), 798 So.2d 987, 990, writ denied. 2001-1737 (La. 9/28/01), 798 So.2d 116. We conclude that OGB had the discretion and a reasonable basis to modify the negotiated terms of the NIC, and we find no error in the administrative interpretations regarding Medlmpact’s proposal. Consequently, we hold that the district court did not err when it found that the Commissioner’s affirmance of OGB’s decision was not arbitrary or capricious.
CONCLUSION
After a thorough review of the entire administrative record, along with analyzing the legislative scheme governing OGB’s procurement of consulting service contracts by means of a competitive negotiated process, we affirm the district court’s judgment on its judicial review of this agency’s decision. Accordingly, OGB’s award of the pharmacy benefit management services contract to Medlmpact is affirmed. Appellate costs are cast to Catamaran PBM of Maryland, Inc.
AFFIRMED.
WHIPPLE, C.J., concurs and assigns reasons.
McCLENDON, J., concurs for reasons assigned by Chief Judge WHIPPLE.

. See La. R.S. 42:801 etseq.

. See La. R.S. 42:802(B)(8)(a) and (b). See also former La. R.S. 39:1481 et seq., containing the Professional Services Procurement Code that was repealed by Acts 2014, No. 864, as of January 1, 2015, with some sections re-designated and contained within the Louisiana Procurement Code at La. R.S. 39:1551 etseq.

. See La. R.S. 42:802(B)(8)(b)(i), providing that OGB is specifically authorized to negotiate and contract for basic health care services for covered persons.

. Most OGB plan participants are enrolled in a self-insured preferred provider organization (PPO) or a health maintenance organization (HMO) plan administered by Blue Cross and Blue Shield of Louisiana, as well as Medicare- *686 eligible retirees who are enrolled in the PPO and HMO plans as a Medicare supplement with prescription drug coverage through the Medicare (Part D) Employer Group Waiver Plan (EGWP).

. OGB's Evaluation Committee determined early on in the process that the proposal submitted by CVS Caremark should not be considered as a finalist in the competitive process due to pending sanctions against CVS Care-mark. The elimination of CVS Caremark as a proposer is not at issue in this appeal. Additionally, we note that ESI did not file a protest in this matter.

. Due to Catamaran’s appeal process, the contract between OGB and Medlmpact has not been finalized; however, the pharmacy services covered by the negotiated contract have been provided to OGB by Medlmpact under an emergency contract that began after the expiration of Catamaran's previous contract with OGB on December 31, 2013. Catamaran instituted a separate petition for declaratory judgment challenging the emergency contract; that action (Suit Number 631798) is pending.in the Nineteenth Judicial District Court and is not relevant to the issues in this appeal.

. The Nineteenth Judicial District Court, subject to appeal or review by this court or the Louisiana Supreme Court, has jurisdiction over any claims arising out of a request for a proposal (or NIC) or an award of a contract involving the state, following exhaustion of administrative remedies. See former La. R.S. 39:1526 (now cited as La. R.S. 39:1672.4). See also La. R.S. 39:1691(A) (no revision to this provision).

. Effective January 1, 2015, the LPC was revised and re-designated by Acts 2014, No. 864, §§ 2 and 3. The LPC was formerly comprised of La. R.S. 39:1551 to 39:1758, and now encompasses La. R.S. 39:1551 to 39:1755. The revision of the LPC involved the repeal of La. R.S. 39:1481 to 39:1526, known as the Professional Services Procurement Code (PSPC), while retaining the general subject matter and incorporating material from the repealed parts into the LPC. However, the revised LPC applies only to contracts solicited or entered into after the effective date of January 1, 2015, unless the parties agree to its application to a contract entered into prior to the effective date. See La. R.S. 39:1554(A)(1), as revised by Acts 2014, No. 864. Since the NIC in this case was issued and the contract was solicited in 2013, we will apply and refer to the former version of the LPC and PSPC, while noting the revised and/or re-designated sections.

. While LAC 34:V. 145(5) (now cited, as LAC 34:V.2545(A)(5)) provides that the agency [OGB] shall conduct written or oral discussions with all responsible proposers, these discussions, often referred to as the finalist meetings, are not required to be recorded or written. Therefore, there is the possibility that in this case, OGB further investigated and/or inquired about these business relationships and the Master Service Agreement at the finalist meeting with Medlmpact. Preter-mitting Catamaran’s allegations regarding the impropriety of Buck’s involvement in this process, this case overwhelmingly demonstrates the need for greater transparency at these finalist meetings.