WHIPPLE, C.J.
Plaintiff, Unisys Corporation ("Unisys"), and defendants, the Louisiana Office of Motor Vehicles, through Kay Hodges, in her official capacity as the Commissioner of the Louisiana Office of Motor Vehicles, and the Louisiana Department of Public Safety and Corrections, through Michael D. Edmonson, in his official capacity as Deputy Secretary of the Louisiana Department of Public Safety and Corrections, (jointly referred to herein as "the Department") appeal a judgment of the district court affirming the Commissioner of Administration's decision concerning Unisys's claim for damages resulting from the termination of its professional services contract with the Department. For the reasons that follow, we amend the judgment of the district court in part, render judgment, in part, and affirm as amended.
FACTS AND PROCEDURAL HISTORY
In December 2002, the Department contracted with Unisys for Phase II of the Next Generation Motor Vehicles ("NGMV") Project, a project to re-engineer the computer systems of the Department of Public Safety and Corrections, Office of Motor Vehicles (OMV) for management of drivers' licenses, suspensions, *640 vehicle registration, and other related functions. In August 2004, Unisys was awarded the Phase III contract for the project, and ultimately, on April 1, 2008, the parties entered into a new "Consulting Services Contract," which incorporated Phase II and Phase III with combined project deliverables and a consolidated schedule (hereinafter "the contract").
Thereafter, on December 15, 2008, a meeting was held between representatives of Unisys and the Department, and a decision was made to terminate the contract. By letter dated January 14, 2009, the Department confirmed the parties' mutual agreement to terminate the contract for convenience, invoking Section 4.2 of the contract.[1] The Department thereafter gave Unisys formal written notice of termination of the contract, effective thirty (30) days from the date of the letter. The Department further advised Unisys that it awaited receipt of the inventory being conducted by Unisys, that it was conducting its own inventory, and that upon completion of these inventories, the Department wished to discuss any outstanding issues, including certain Unisys statements.
After the contract was terminated, on March 11, 2009, Unisys submitted its prepared inventory of deliverables and their completion status and requested additional payment in the amount of $8,771,189.00 for work purportedly "in progress" at the time of the termination.[2] Following unsuccessful negotiations between the parties, by letter dated November 6, 2009, Deputy Secretary Edmonson notified Unisys that the Department's "position" was "that the parties mutually agreed to terminate the project, and that none of the sums are due with regards to [Unisys's] claim for retainage, deliverables in progress, or the 'purported unpaid completed deliverables'." The Deputy Secretary specifically concluded that after reviewing Unisys's claim for additional payment in the amount of $1,320,084.00, the documentation regarding these four deliverables revealed that all of the contractual requirements for payment had not been met, thus no payment was due. The Deputy Secretary further determined that the contract did not authorize payment of retainage upon early termination of the contract, the deliverables in progress were not satisfactorily completed, the work performed by Unisys had not yielded a usable product for the Department, and the documentation regarding the four purportedly completed deliverables revealed that all contractual requirements for payment had not occurred.
On June 2, 2010, in accordance with LSA-R.S. 39:1524 and 39:1525 of the Professional Services Procurement Code ("PSPC"),[3] Unisys sought a written decision *641 resolving the controversy from the Commissioner of Administration.[4] Unisys asked the Commissioner to confirm that the contract was terminated for convenience by the Department and to resolve the amount of additional compensation due to Unisys for work performed up to the date of termination including, but not limited to: (a) $1,514,905.00 for four deliverables approved and accepted by the Department prior to the termination; (b) $2,716,240.00 withheld by the Department from the prior payments to Unisys for deliverables the Department approved and accepted; and (c) $4,470,673.00 for work that was satisfactorily completed and/or in progress at the time the Department terminated the contract. The matter was submitted to the Commissioner on the administrative record, the contracts between Unisys and the Department, and the briefs of the parties.
On July 9, 2010, the Commissioner issued a decision concerning the three claims urged by Unisys for additional payment under the contract. The Commissioner concluded that upon termination of the contract, Unisys was entitled to payment for deliverables in progress "to the extent the work has been performed satisfactorily and approved by the Agency," and thus, that Unisys was entitled to payment for four deliverables that had been approved by the Department. The Commissioner thereby reversed the decision of the Deputy Secretary denying Unisys payment in the amount of $1,320,084.00,[5] but further determined that Unisys was not entitled to any further payment for the other items claimed.[6]
Thereafter, on August 13, 2010, in accordance with LSA-R.S. 39:1526 and 49:964, Unisys filed a "Petition for Limited Judicial Review of Administrative Decision" in the Nineteenth Judicial District Court, challenging the Commissioner's denial of its claims for retainage and deliverables in progress. In its petition, Unisys specifically stated that it was not seeking review of the portion of the Commissioner's decision finding that Unisys was entitled to $1,320,084.00 for the deliverables approved. Instead, Unisys sought judicial review of the Commissioner's denial of its claims for: (1) the retainage withheld by the Department from the payments to Unisys for deliverables the Department approved and accepted totaling $2,716,240.00; and (2) work that was satisfactorily completed and/or in progress at the time the Department terminated the contract for convenience totaling $4,470,673.00. Unisys additionally sought attorney's fees, costs of court, and interest, including prejudgment interest.
Unisys further asserted that the Department had no right to appeal the Commissioner's decision, and that accordingly, the part of the decision finding that Unisys *642 was entitled to $1,320,084.00 for the four identified deliverables was "final and conclusive." In response, the Department filed an answer to the petition for judicial review together with a "reconventional demand," seeking "to traverse the adverse finding of the Commissioner" that Unisys was entitled to payment of $1,320,084.00 under the contract for deliverables approved.
In response to the Department's reconventional demand, Unisys filed a declinatory exception of lack of subject matter jurisdiction and peremptory exceptions of no cause of action and no right of action, contending that the Department had no right of action or cause of action for judicial review of the Commissioner's decision pursuant to LSA-R.S. 39:1524, et seq. and, thus, that the district court lacked subject matter jurisdiction over the Department's request for judicial review, which had been mischaracterized as a "reconventional demand." After a hearing on the matter, the district court rendered judgment, maintaining the exception of no cause of action and dismissing the Department's reconventional demand with prejudice, stating that the court's "judicial review is hereby limited to the matters raised in the Petition filed by [Unisys]."
The Department appealed the district court's judgment, contending that the district court erred in dismissing its reconventional demand for review of the Commissioner's entire decision, including the additional payment for retainage awarded to Unisys. On appeal, this court rendered an opinion ("Unisys I"), wherein we determined that if a contractor seeks review of a Commissioner's decision, pursuant to LSA-R.S. 39:1525, the decision does not become final and conclusive, and the district court thus has the right to review all portions of the decision. Accordingly, this court found that the district court erred in maintaining Unisys's exception of no cause of action and in dismissing the Department's request to have the district court also consider the portion of the Commissioner's decision that granted partial relief to Unisys. Thus, we reversed the decision of the district court and remanded the case to the district court for further proceedings. See Unisys Corporation v. Louisiana Office of Motor Vehicles, 2012-1578, p. 7 (La. App. 1st Cir. 6/3/13) (unpublished), writ denied, 2013-1839 (La. 11/1/13), 125 So.3d 437.
After the matter was remanded to the district court, the Department filed its own exception of no cause of action as to Unisys's demand for a money judgment pursuant to a petition for judicial review, contending that the statutory provisions by which the Commissioner rendered her decision did not authorize the adjudication of Unisys's claims, and that there was no cause of action for an award of a money judgment against the Department. Following a hearing, the district court rendered judgment on November 16, 2015, denying the Department's exception of no cause of action.[7]
The merits of the petition were then briefed by the parties, and on January 23, 2017, the matter was argued before the district court. At the conclusion of the hearing, the district court took the matter under advisement. On April 27, 2017, the district court issued a written "Ruling" setting forth its reasons for upholding the decision of the Commissioner. A judgment was subsequently signed by the district court on December 19, 2017, affirming the decision of the Commissioner without modification.
*643 Both the Department and Unisys now appeal the judgment of the district court.
On appeal, the Department contends that the district court erred in: (1) denying its exception of no cause of action as to Unisys's demand for a money judgment pursuant to judicial review; and (2) affirming the Commissioner's decision that the Department should pay Unisys for the four subject invoices for deliverables totaling approximately $1.3 million.
Unisys answered the Department's appeal, urging this court to: (1) affirm the judgment of the district court insofar as it affirmed the Commissioner's award of $1,320,083.00 to Unisys for four previously approved, but unpaid deliverables and to amend the judgment to expressly award this monetary sum in favor of Unisys and against the Department; (2) conduct a de novo review and reverse the district court's and Commissioner's denial of Unisys's remaining claim for retainage and render judgment in favor of Unisys for the additional $2,911,421.00 as payment due under the contract for unpaid retainage on deliverables previously approved; and (3) amend the district court's judgment to expressly award Unisys legal interest at the rate fixed by LSA-R.S. 9:3500 and LSA-R.S. 13:4202 from the effective date of the termination of the contract, i.e., February 13, 2009, until all sums due Unisys are paid. Unisys further prayed for judgment awarding it all costs on appeal.
Unisys also filed its own appeal of the district court's judgment reiterating the arguments previously urged in its answer to appeal and assigning as error the district court's: (1) denial of Unisys's claim for $2,911,061.00 in retainage payments withheld on accepted deliverables under the contract; and (2) failure to enter judgment awarding Unisys legal interest on the total amount of the payment due it from February 13, 2009 (the effective date of the termination of the contract) until paid.
DISCUSSION
Exception of No Cause of Action
(The Department's First Assignment of Error)
In its first assignment of error, the Department contends that the district court erred in denying the Department's exception of no cause of action as to Unisys's demand for a money judgment pursuant to judicial review.[8]
The function of the peremptory exception raising the objection of no cause of action is to test the legal sufficiency of a pleading by determining whether the law affords a remedy on the facts alleged in the pleading. Hill v. Jindal, 2014-1757, 2014-1484 (La. App. 1st Cir. 6/17/15), 175 So.3d 988, 1000, writ denied, 2015-1394 (La. 10/23/15), 179 So.3d 600. The exception is triable on the face of the pleadings, and, for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Hill v. Jindal, 175 So.3d at 1000. In reviewing a district court's ruling sustaining an exception raising the objection of no cause of action, appellate courts *644 conduct a de novo review, because the exception raises a question of law, and the district court's decision is based only on the sufficiency of the petition. Torbert Land Company, L.L.C. v. Montgomery, 2009-1955 (La. App. 1st Cir. 7/9/10), 42 So.3d 1132, 1135, writ denied, 2010-2009 (La. 12/17/10), 51 So.3d 16.
The Department contends that the relief Unisys seeks in the form of a "money judgment" is not found in the PSPC statutes and the administrative process of judicial review. The Department argues that Unisys has improperly chosen to obtain relief from the Commissioner, and through a petition for judicial review of the Commissioner's decision, without any adjudication of its claims and defenses. The Department further argues that, pursuant to Louisiana Constitution article V, § 16 (A), a contract dispute constitutes a civil matter over which original jurisdiction is vested in the district courts.
Section 6 of the contract entered into herein by the parties, entitled, "CONTRACT CONTROVERSIES," provides that "[a]ny claim or controversy arising out of the contract shall be resolved by the provisions of Louisiana Revised Statute 39:1524 -26." The versions of those statutes in effect at the time the contract was confected provided as follows:
Louisiana Revised Statute 39:1524, entitled "Authority of the commissioner of administration," provided:
Prior to the institution of any action in a court concerning any contract, claim or controversy, the commissioner of administration with the concurrence of the attorney general is authorized to compromise, pay, or otherwise adjust the claim by or against or a controversy with a contractor relating to a professional, personal, consulting, or social service contract entered into with the state under their respective authority, including a claim or controversy based on breach of contract, mistake, misrepresentation, or other cause for contract modification or rescission. Nothing herein shall limit the authority of the commissioner of administration, pursuant to rules and regulations to issue, negotiate, or accept changes in the terms and conditions of a contract. When authorized, such compromise, payments, or adjustments shall be promptly paid; however, subject to any limitations or conditions imposed by rule or regulation, the commissioner of administration shall charge back all or any portion of such payments to the department or departments for whose benefit the contract was let. [Emphasis added.]
Louisiana Revised Statute 39:1525, entitled "Action on contract claims," provided as follows:
This Section applies to a claim by or controversy between the state and a contractor arising out of a contract for professional, personal, consulting, or social services. If such a claim or controversy is not resolved by mutual agreement, the commissioner of administration, or his designee, shall promptly issue a decision in writing. A copy of that decision shall be mailed or otherwise furnished to the contractor, shall state the reasons for the action taken, and shall inform the contractor of his right to judicial relief as provided in this Part. The decision shall be final and conclusive unless fraudulent, or unless the contractor institutes suit pursuant to R.S. 39:1526. If the commissioner of administration, or his designee, does not issue a written decision within one hundred twenty days after written request for a final decision, or within such longer period as may be established in writing by the parties to the contract, then the contractor *645 may proceed as if an adverse decision had been received. [Emphasis added.]
Louisiana Revised Statute 39:1526, entitled "Jurisdiction; actions in certain cases," provided as follows:
A. The Nineteenth Judicial District Court, subject to appeal as provided by law, shall have jurisdiction over controversies involving the state in connection with a petition for review of a decision made pursuant to R.S. 39:1525.
B. In any action by a contractor based upon any express or implied contract or breach thereof, no action shall be maintained based upon any contract or any act of any state officer which the officer is not authorized to make or do by the laws of this state, unless the contractor, acting in good faith and without actual or constructive knowledge of the lack of authorization, has commenced performance under the apparent contract. In that event, the court may (1) cancel the contract and reimburse the contractor only for the actual expenses incurred in performing the work already performed or (2) where the best interests of the state require, allow the performance of the contract to continue.
As we noted in Unisys I, these statutes contemplate an administrative procedure by which claims by or against a contractor pursuant to a professional services contract may be "compromise[d], pa[id], or otherwise adjust[ed]" by the Commissioner of Administration. Thereafter, if the contractor is dissatisfied with the decision of the Commissioner, the contractor may institute suit by filing a "petition for review" of the Commissioner's decision with the Nineteenth Judicial District Court pursuant to LSA-R.S. 39:1526(A). See Unisys Corporation v. Louisiana Office of Motor Vehicles, 2012-1578 at p. 5,, citing United Healthcare Insurance Company v. State, Division of Administration, 2011-1398 (La. App. 1st Cir. 9/28/12), 103 So.3d 1095, 1099.
As further recognized in Unisys I, judicial review of the decision of an administrative agency is an exercise of a court's appellate jurisdiction pursuant to La. Const. art. V, § 16 (B), which provides that "[a] district court shall have appellate jurisdiction as provided by law." Thus, for the purpose of judicial review of an administrative action, district courts are courts of limited jurisdiction and only have appellate jurisdiction to review administrative decisions as provided by the legislature or constitution. Additionally, the existence of a specific statutory procedure generally implies a legislative intent that the special statutory procedure be the exclusive means of obtaining judicial review in the situations to which it applies. See Unisys Corporation v. Louisiana Office of Motor Vehicles, 2012-1578 at pp. 5-6,, citing Willows v. State, Department of Health & Hospitals, 2008-2357 (La. 5/5/09), 15 So.3d 56, 60 ; Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 2001-0185 (La. 10/16/01), 797 So.2d 656, 660.
In Unisys I, this court held that, by filing its petition for judicial review of the Commissioner's decision, Unisys did not invoke the court's original jurisdiction, but instead sought to file an appeal seeking judicial review of the Department's administrative action in compromising, paying, or otherwise adjusting the claim by Unisys pursuant to the district court's appellate jurisdiction under LSA-R.S. 39:1526 and La. Const. art. V, § 16 (B). See Unisys Corporation v. Louisiana Office of Motor Vehicles, 2012-1578 at pp. 5-6,. Thus, in Unisys I, this court concluded that both *646 the district court and this court have subject matter jurisdiction to review administrative actions involving settlement and controversies arising out of professional consulting services contracts, such as the contract herein. Unisys Corporation v. Louisiana Office of Motor Vehicles, 2012-1578 at p. 3.
Moreover, this court has previously recognized that a claim or controversy between the State and a contractor arising out of a contract for professional services involving a money judgment shall be resolved by the Commissioner of Administration pursuant to LSA-R.S. 39:1524 and 39:1525, and that the Commissioner's decision is subject to review by the Nineteenth Judicial District Court pursuant to LSA-R.S. 39:1526. See State, ex rel. Guste v. Texaco, Inc., 433 So.2d 756, 759-760 (La. App. 1st Cir. 1983), writs granted, 441 So. 2d 207 (La. 1983), appeal dismissed, 453 So.2d 557 (La. 1984) (where this court determined that the provisions of LSA-R.S. 39:1524, et seq. provide the required statutory vehicle for a claim for professional services made by special counsel for $873,000.00 arising out of a contract for professional services) and Bernhard Mechanical Contractors, Inc. v. Board of Supervisors, p. 5, 2007-1369 (La. App. 1st Cir. 5/2/08), 2008 WL 2065944 (unpublished) (where this court concluded that in circumstances where a contractor submitted a request for additional work performed at a cost of $2,300,000.00, the parties were not bound to arbitrate under the contract, but instead, the contractor's proper recourse was to seek review of the matter and a decision by the Commissioner pursuant to LSA-R.S. 39:1525.)
By entering into the contract herein, the Department agreed that any "claim or controversy arising out of the contract" would be resolved pursuant to the administrative procedure set forth in LSA-R.S. 39:1524 -1526. Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. LSA-C.C. art. 1983 ; Waterworks District No. 1 of DeSoto Parish v. Louisiana Department of Public Safety and Corrections, 2016-0744 (La. App. 1st Cir. 2/17/17), 214 So.3d 1, 5, writ denied, 2017-0470 (La. 5/12/17), 219 So.3d 1103. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. Thus, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. Hampton v. Hampton, 97-1779 (La. App. 1st Cir. 6/29/98), 713 So.2d 1185, 1188-1189. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art. 2046 ; Sanders v. Ashland Oil, Inc., 96-1751 (La. App. 1st Cir. 6/20/97), 696 So.2d 1031, 1036, writ denied, 97-1911 (La. 10/31/97), 703 So.2d 29.
On review, it is apparent that the Department acquiesced in the proceedings below leading up to the Commissioner's decision, where the Department did not at any time request notice, discovery, expert witnesses, or an evidentiary hearing or adjudication. Nonetheless, the Department now contends: (1) that the Commissioner, who was granted the specific authority to authorize payment of "claim[s] by or against or a controversy with a contractor relating to a professional, personal, consulting, or social service contract entered into with the state," had no authority to decide a monetary claim; (2) that the Commissioner did not render an enforceable monetary award; and (3) that the district court has no authority under LSA-R.S. 39:1526 to render a money judgment on *647 judicial review of the Commissioner's decision, presumably because they are dissatisfied with the Commissioner's decision herein. See LSA-R.S. 39:1524.
After a thorough review of the jurisprudence and statutory scheme, we find that the legislature enacted LSA-R.S. 39:1524 and 39:1525 setting forth an administrative procedure for resolving such controversies unique to public professional service contracts, by providing the Commissioner the statutory authority to decide, inter alia, Unisys's claims for payment under the contract against the Department. Moreover, as we previously found in Unisys I, the district court had the authority under LSA-R.S. 39:1526 and La. Const. art. V, § 16 (B) to judicially review the Commissioner's decision and render an enforceable money judgment involving payment to a contractor under the terms of a professional services contract with the Department without infringing on La. Const. art. V, § 16 (B). See Unisys Corporation v. Louisiana Office of Motor Vehicles, 2012-1578 at pp. 5-7.
For these reasons, we reject the Department's arguments herein and find no error in the district court's denial of the Department's peremptory exception raising the objection of no cause of action. This assignment lacks merit.
Standard of Review
The general principle governing the standard of review to be used when reviewing the findings of an administrative agency is that, if the evidence, as reasonably interpreted, supports the agency's determinations, then the agency's decisions are accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action was arbitrary or capricious. Catamaran PBM of Maryland, Inc. v. State, Office of Group Benefits, 2014-1672 (La. App. 1st Cir. 6/5/15), 174 So.3d 683, 688, citing United Healthcare Insurance Company v. State, Division of Administration, 103 So.3d at 1099. Further, an administrator vested with authority to exercise discretion is free to exercise that discretion as he or she sees fit as long as the exercise of that discretion is rational and not arbitrary or capricious. Catamaran PBM of Maryland, Inc. v. State, Office of Group Benefits, 174 So.3d at 688. The agency's discretion must be exercised in a fair and legal manner and not arbitrarily. The test for determining whether an action was arbitrary or capricious is whether the action taken was without reason. United Healthcare Insurance Company v. State, Division of Administration, 103 So.3d at 1100.
Payment of Four Deliverables
(The Department's Second Assignment of Error)
In this assignment of error, the Department contends that once Unisys declared at the December 2008 meeting that it would not perform under the agreed terms, Unisys was in anticipatory breach of the contract. Thus, the Department contends that Unisys, as the "repudiator" of the contract, was not entitled to receive additional payments after it refused to perform under the contract, particularly where the Department would receive no benefit for the payments. As support, the Department notes that after Unisys repudiated the contract, the Department could not unilaterally invoke the termination-for-convenience provision of the contract because Unisys had already terminated the contract. Thus, the Department argues, the Commissioner erred in failing to recognize that Unisys's repudiation of the contract meant that the Department had no further obligation to pay Unisys any amounts.
*648 The record reflects that in its letter of January 14, 2009 to Unisys, the Department clearly stated that it was invoking Section 4.2 of the contract to terminate the contract for convenience, as follows:
This will confirm that a meeting was held on December 15, 2008 between representatives of Unisys Corporation (Unisys) and the State of Louisiana, Department of Public Safety (the Department), wherein the parties mutually agreed to terminate for convenience the Consulting Services Contract between the respective parties for the master re-engineering project known as Next Generation Motor Vehicle (NGMV). In furtherance of the mutual agreement to terminate, the Department invokes Section 4.2, Termination for Convenience, of the contract, and hereby gives formal written notice to Unisys that the contract is terminated thirty (30) calendar days from the date of this letter. [Emphasis added.]
Section 4.2 of the contract, entitled, "Termination for Convenience," provides that the:
Agency may terminate the Contract at any time without penalty by giving thirty (30) days written notice to the Contractor of such termination or negotiating with the Contractor an effective date. Contractor shall be entitled to payment for deliverables in progress; to the extent work has been performed satisfactorily.
On January 29, 2009, the Department sent another letter to Unisys, wherein the Department referenced its earlier correspondence of January 14, 2009, "regarding [the parties'] mutual agreement to terminate" the contract, and advised that it had completed its inventory and that it "look[ed] forward to hearing from [Unisys] regarding [the] status of the Unisys inventory."
As further pointed out by Unisys in brief, the Department never: (1) invoked Section 4.1 of the contract, which provided for Termination for Cause; (2) notified Unisys that it had failed to comply with the contract; or (3) placed Unisys in default. Unisys thus contends that the Department cannot avoid the effect of its own judicial admissions, re-write the agreement, and shirk its contractual responsibilities and obligations under Section 4.2 to pay Unisys for work satisfactorily performed by now asserting that Unisys was in anticipatory breach of the contract.
After reviewing Unisys's appeal of the decision of the Deputy Secretary and its supporting attachments, the Department's response to the appeal, the decision of Colonel Edmonson, the administrative record, and the pertinent contracts, the Commissioner found that "On January 14, 2009, at the request of Unisys, the Department provided Unisys with written notification that the contract was terminated for convenience." With reference to the termination of the contract, the Commissioner found as follows:
The Department contends that the agreement to terminate the contract was mutually agreed, due in part to the history of the project and Unisys'[s] continued request to seek additional payments. The Department further contends that Unisys in many instances failed to achieve contract requirements. Presumably, these failures are shown to substantiate that the mutually agreed termination ended the contract without damages or payments owed to either party. Even though the contract does not provide for termination by mutual agreement, it is fundamental that two parties to a contract may mutually agree to terminate the same. In some instances a mutual agreement to terminate could include the relinquishment of all *649 claims against the other; however, I do not find this to be the case herein. Regardless of whether the contract was terminated for convenience or by mutual agreement the outcome remains the same. Consistent with the terms of the contract, I find that the contractor is entitled to payment for those deliverables in progress to the extent that the work has been performed satisfactorily and approved by the Agency.
On review of the Commissioner's decision regarding termination of the contract, the district court found as follows:
When the parties entered into their individual contract in 2002, both sides agreed to the language of the contract. This included section 4.2 which allowed the Department to terminate the contract "for its convenience." The [Department] chose to invoke this clause and terminate the contract. The issues that resulted from the termination were all reviewed at length by the Commissioner of Administration who issued an opinion addressing the issues presented by both sides. This Court is charged with determining if that decision should be overturned, confirmed or modified based on the standard of review set forth above.
After reviewing the ruling of the Commissioner, along with the extensive and thorough briefs filed by both Unisys and the [Department], this Court upholds the ruling made by the Commissioner without modification. It does not find that there was a clear showing from either side that [...] the decisions made on each issue were arbitrary or capricious and thus the ruling should not be reversed or modified by this Court.
On the record before us, we are likewise unable to find that the Commissioner's decision that the parties mutually agreed to terminate the contract was arbitrary and capricious. Instead, on review, we find that this decision was reasonable and amply supported by the record herein.
The Department additionally (and alternatively) argues in this assignment of error that the Commissioner erred in ordering the Department to pay the invoices for four deliverables where the work was not "satisfactorily performed" as required by Section 4.2 of the contract and that the deliverables had not been properly "fully approved" for payment because they were not accepted and approved by the Director of Information Services and Communication.
Section 3.1 of the contract, which sets forth the terms for payment, provides in part that:
Payments are predicated upon successful completion and written approval by the Agency of the described tasks and deliverables as provided in Section 1.0. Payments will be made to the Contractor after written acceptance by the Agency of the payment task and approval of an invoice. Agency will make every reasonable effort to make payments within 25 workdays of the approval of invoice and under a valid contract. Payment will be made only on approval of the Director of Information Services and Communication.
Pursuant to the terms of the contract, the Commissioner ordered payment of the following deliverables: (1) 6D-NGMV Data Inquiry Test Evaluation Report, signed by Staci Hoyt on October 2, 2008, for payment of $268,959.00; (2) 2F-Architecture Deployment Evaluation Report, signed by Albert Green on December 2, 2008, for payment of $454,754.00; (3) 6F-Unit Tested Data Conversion Program, signed by John Aranyosi on October 2, 2008, for payment of $409,667.00; and (4) 6G-Mock Data Conversion Completion Reports, signed by Albert Green on December 2, *650 2008, for payment of $186,703.00. The following clause appears above the Department representative's signature line on each statement followed by the cost due for the specific deliverable:
By signing below, I certify that all work specified for this project deliverable has been completed as contracted. Based upon the NGMV Payment Schedule in Exhibit B of the contract, OMV will be invoiced based upon the following schedule[.]
In ordering payment of the deliverables, the Commissioner found that although three of the four deliverables were signed by someone other than the Director of Information Services and Communication, whom it identified as Staci Hoyt, the Department had implicitly modified the contract requirements by allowing other deliverables to be approved and accepted by individuals other than the Director of Information Services and Communication. The Commissioner further noted that the Department did not challenge the validity of the signatures of the other three contested deliverables, stating as follows:
One basic rule of contract law is that the parties to contracts must perform as specified in the contract unless (1) the parties agree to the change in the contract's terms, or (2) the actions of the party who deviates from the terms of the contract are implicitly accepted ("ratified") by the action or non-action of the other party. In this instance, despite the clear language of the contract, the record indicates that other deliverables (not at issue) had been accepted and approved by someone other than the Director and paid by the Department. It is not uncommon that subsequent action of the parties to a contract can modify contract requirements; therefore the Department's payment for deliverable[s] approved by someone other than the Director was an implicit modification of the contract requirement. Also, it should be noted that the Department does not challenge the validity of the signature on the contested three deliverables.
Since it is uncontested that the three deliverables at issue were signed and accepted, and there are no allegations by the Department that the signatures are fraudulent, I find that all four identified deliverables [...] should be paid to Unisys.
The Department, however, contends that the Commissioner erred in finding that the deliverable signed by Staci Hoyt was compliant with Section 3.1 because Staci Hoyt was the Director of Information Services and Communication, when, in fact, Ms. Hoyt was the Project Director, and the position of Director of Information Services and Communication was held at different times by Mr. Rex McDonald and Mr. Jeya Selvaratnam, neither of whom signed off on any of the four deliverables in question. With reference to the Commissioner's finding that the Department had implicitly modified the contract requirements by allowing other deliverables to be approved and accepted by individuals other than the Director of Information Services and Communication, the Department argues that under the contract, the specific process and requirements for approval of payments could not be modified or waived by the Department by prior practice or otherwise. In support, the Department cites Section 21.0 of the contract, which provides that "[a]ny alteration, variation, modification, or waiver of provisions of this contract shall be valid only when they have been reduced to writing, duly signed."
Contrariwise, Unisys contends that Section 4.2 of the contract, which provides for termination for convenience, does not provide that Unisys would only be paid for deliverables formally approved for payment *651 in accordance with Section 3.1, but that the "[c]ontractor shall be entitled to payment for deliverables in progress; to the extent work has been performed satisfactorily." Thus, Unisys counters that the fact that the deliverables were signed for, approved, and accepted by someone other than the Director of Information Services and Communication does not mean that the work was not performed satisfactorily for purposes of Section 4.2.
As to the Department's contention that payment for these deliverables was not "properly approved" pursuant to Section 3.1 and that any waiver of the provisions of the contract had to be reduced to writing pursuant to Section 21.0, we note that written contracts may be modified by oral contracts or by the conduct of the parties, even when the written contract contains the provision that it must be modified in writing. Modification of a written agreement can be presumed by silence, inaction, or implication. Fleming v. JE Merit Constructors, Inc., 2007-0926 (La. App. 1st Cir. 3/19/08), 985 So.2d 141, 146 ; Britton v. Hayes, 2009-2229, p. 5 (La. App. 1st Cir. 6/11/10), 2010 WL 2342846 (unpublished), writ denied, 2010-1917 (La. 11/5/10), 50 So.3d 810.
The record establishes that Hoyt, Green, and Aranyosi routinely signed for and approved deliverables on behalf of the Department. Moreover, the weekly status report of September 28, 2008 through October 4, 2008 indicates that deliverables 6D and 6F were approved by the Department, and the weekly status report of December 3, 2008 indicates that deliverables 2F and 6G were approved by the Department.
Considering that the record establishes that the Department routinely allowed acceptance of deliverables by representatives of the Department other than the Director of Information Services and Communication, we find the Commissioner's decision, namely that the Department's actions of issuing payments for deliverables upon approval by someone other than the Director established an implicit modification of the contract, is reasonable and supported by the record herein. For these reasons, we find the Commissioner's decision that the Department must pay Unisys $1,320,083.00 for the four aforementioned deliverables is also reasonable and supported by the record. Accordingly, we find no error in the district court's judgment affirming the Commissioner's decision in this regard. This assignment of error lacks merit.
Considering our resolution of this assignment of error, we further grant the portion of Unisys's answer to appeal urging this court to affirm the district court's judgment insofar as it affirmed the Commissioner's award of $1,320,083.00 to Unisys as basic payment for four deliverables previously approved by the Department but unpaid under the contract and hereby amend the judgment of the district court to expressly award the sum of $1,320,083.00 in favor of Unisys and against the Department.
Retainage Payments
(Unisys's First Assignment of Error)
In its first assignment of error on appeal, Unisys contends that the Commissioner and the district court erred in denying Unisys recovery of $2,716,240.00 in retainage withheld by the Department from all prior payments to Unisys for approved and accepted deliverables, as set forth in its inventory, and in erroneously denying additional retainage in the amount of $194,821,00 withheld on four more deliverables (2F, 6D, 6F, and 6G) previously approved and accepted, but unpaid, for a total of $2,911,061.00.
Section 3.1 of the contract governing the terms of payment further provides that:
*652 During the execution of tasks contained in the Statement of Work, the Contractor may submit invoices, not more frequently than monthly. The payment terms are as follows:
The Contractor shall provide a twelve (12) month warranty period after the completion of the NGMV project. The agency shall hold a retainage of the total amount of the contract until the warranty period begins per Attachment VI Payment Schedule. During the warranty period the Contractor shall provide reports on a monthly basis which indicate the performance, availability, and stability of the deployed NGMV system. Upon review and approval by the Agency, the retainage shall be dispersed to the Contractor per the Attachment VI Payment Schedule. This process shall continue monthly until the warranty period is complete.
Unisys contends on appeal that the retainage was "part and parcel" of the payment due Unisys for work satisfactorily performed on deliverables that the Department had accepted and approved, and was not for additional services to be performed in the future, but was instead a percentage of earned payment withheld from Unisys for work already done. Unisys argues that the purpose of the retainage was to merely ensure that Unisys would satisfy the warranty period, if it had been possible for the Project to proceed to completion. Unisys contends that by terminating the contract for convenience, the Department obligated Unisys to cease further work and prevented it from completing the contract and satisfying the warranty, arguing that completion of the contract was a suspensive condition to receiving retainage withheld under Section 3.1. Unisys further argues that pursuant to LSA-C.C. art. 1772, the condition precedent of satisfying the warranty after completion of the entire project is considered fulfilled due to the fault of the Department by terminating the contract for convenience before its full completion, which rendered it impossible for Unisys to complete the project and fulfill the warranty period. Thus, Unisys contends that it should be allowed to recover full payment for all previously approved deliverables, including retainage.[9]
The Department argues that the "retainage" Unisys claims is actually warranty work deliverables that was only to be paid upon completion and delivery by Unisys and that Unisys did not ultimately perform any of the warranty work deliverables. The Department further contends that Section 4.2 of the contract provides that when a contract is terminated for convenience, the contractor is only entitled to payment for work that "has been performed satisfactorily." Thus, the Department contends that where Unisys has performed no warranty work, no amount is due under this provision of the contract. As to Unisys's argument that the "fault" of the Department in terminating the contract for convenience renders the condition of its performing warranty work fulfilled pursuant to LSA-C.C. art. 1772, the Department contends that the party clearly at fault in the failure of the contract was Unisys, where in December of 2008, Unisys made it clear that it would not complete the Project unless the Department committed to paying an additional $9 million dollars. The Department further contends that even with this additional payment, Unisys would not guarantee a successful system. The Department argues that, at that point, Unisys committed an *653 anticipatory breach of the contract by its declaration that it would not honor its existing terms. Under these facts, the Department avers that it had no obligation to place Unisys in default for cause because Unisys had declared its "unwillingness to perform" by December 15, 2008.
The Commissioner denied Unisys's claims for retainage, finding that Unisys was not entitled to retainage pursuant to Section 3.1 of the contract and, further, that Section 4.2 only entitled Unisys to payment for deliverables in progress and satisfactorily performed. In doing so, the Commissioner noted:
Another basic rule of contract law provides that where a contract is amenable to only one reasonable construction upon its face, it would not be appropriate to strain the language of other contractual provisions to create an ambiguity. The plain language of the contract is clear and unambiguous in stating that Unisys'[s] duty to warranty the performance of the NGMV system during the warranty period is a condition precedent to disbursement and entitlement of retainage. (Section 3.1) Moreover, construing the duty as a condition precedent is consistent with the complex nature of the contract, being an agreement for software development, applications and programming. Furthermore, the contract reinforces this concept in the termination provision. Under the termination provision, Section 4.2 clearly states that the Contractor is only entitled to payment for deliverables in progress and satisfactorily performed. There is no evidence to suggest that where the contract is terminated prior to the successful completion of the warranty period the retainage would be released. Release of retainage is governed by the terms of the parties' contract.
(Emphasis added.)
On review, we note that Section 3.1 of the contract clearly provides that payment of retainage "shall be disbursed" to the contractor over a twelve-month warranty period "after completion of the NGMV project." Section 3.1 further provides that "[d]uring the warranty period the Contractor shall provide reports on a monthly basis which indicate the performance, availability, and stability of the deployed NGMV system." Moreover, while Section 4.2 entitles Unisys to payment for deliverables in progress to the extent work has been performed satisfactorily, this section makes no reference whatsoever to payment of retainage where the contract is terminated for convenience. Accordingly, we find no error in the Commissioner's determination that pursuant to Sections 3.1 and 4.2, where the project was clearly not completed, the contract does not require disbursement of the retainage.
Moreover, we reject Unisys's argument that its condition of warranty was fulfilled pursuant to LSA-C.C. art. 1772 because the Department was at fault in terminating the contract. As set forth above, we find no error in the Commissioner's determination that the parties mutually agreed to terminate the contract. Accordingly, we find no merit to this assignment of error. For these same reasons, we also deny Unisys's request for judgment in its favor for retainage on all deliverables previously approved in its answer to appeal.
Legal Interest
(Unisys's Second Assignment of Error)
In its second assignment of error, Unisys contends that it is entitled to an award of legal interest on all amounts due as payment under the contract from February 13, 2009, the date of termination, until *654 paid, pursuant to LSA-C.C. art. 2000, and at the rate fixed by LSA-R.S. 9:3500, as set forth in LSA-R.S. 13:4202.
In its petition for judicial review of the Commissioner's decision, Unisys prayed for an award of attorney's fees, costs of court, and interest, including prejudgment interest. Although the judgment of the district court affirmed the Commissioner's decision without modification, the judgment is silent as to these claims, including Unisys's claims for interest.[10]
Generally, silence in a judgment of the district court as to any issue, claim, or demand placed before the court is deemed a rejection of the claim and the relief sought is presumed to be denied. Schoolhouse, Inc. v. Fanguy, 2010-2238 (La. App. 1st Cir. 6/10/11), 69 So.3d 658, 664. Where Unisys's claim for legal interest was placed before the district court, we will consider the district court's silence as a denial of that claim.
Louisiana Civil Code article 2000 provides that "[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500." Moreover, LSA-C.C.P. art. 1921 provides that "the court shall award interest in the judgment as prayed for or as provided by law." Since the word "shall" is mandatory, courts lack discretion to deny interest if interest is prayed for or provided for by law. See LSA-R.S. 1:3 ; Quality Design and Construction, Inc. v. City of Gonzales, 2013-0752 (La. App. 1st Cir. 3/11/14), 146 So.3d 567, 573. We also note that under Louisiana law, debt bears interest from the due date. See EXCELth, Inc. v. State through Department of Health and Hospitals, 2017-0363 (La. App. 1st Cir. 12/19/17), 234 So.3d 160, 169, writ denied, 2018-0113 (La. 3/9/18), 238 So.3d 453, citing Quality Design and Construction, Inc. v. City of Gonzales, 146 So.3d at 573, (where this court affirmed a judgment of the district court awarding legal interest to a qualified health provider on review of its appeal of an administrative decision by an administrative law judge when judicial interest was not prayed for by the qualified health provider).
On review, we find that legal interest on the sum demanded and awarded in this case is supported by law. Accordingly, we find the district court erred in failing to make such an award herein. We decline, however, to award legal interest from the date the contract was terminated. Although the contract was terminated effective February 14, 2009, the Department did not have an opportunity to review Unisys's inventory to determine whether Unisys was entitled to payment for deliverables in progress until Unisys submitted its prepared inventory of deliverables and their completion status on March 11, 2009. As such, we find that Unisys is entitled to legal interest on the amount owed from March 11, 2009, until paid.
Considering our resolution of this assignment of error, Unisys's request for an award of legal interest in its answer to appeal is granted for the reasons set forth above. To the extent that, in its answer to appeal, Unisys further sought judgment awarding it all costs on appeal, given our determinations herein, we will assess one-half of the costs to Unisys and one-half of the costs to the Department.
CONCLUSION
For the above and foregoing reasons, the December 19, 2017 judgment of the *655 district court is amended to expressly state that the sum of $1,320,083.00 is awarded in favor of Unisys and against the Department. In all other respects, the judgment is affirmed. We further render judgment awarding Unisys legal interest on the amount due from March 11, 2009, until paid.
Unisys's answer to appeal is granted in part and denied in part. Costs of this appeal are assessed one-half to Unisys and one-half to the Department.
RENDERED IN PART; AMENDED IN PART, AND AFFIRMED, AS AMENDED.

Section 4.2 of the contract, regarding termination for convenience, provides that the "Agency may terminate the Contract at any time without penalty by giving thirty (30) days written notice to the Contractor of such termination or negotiating with the Contractor an effective date."

Section 4.2 of the contract further provides that the "[c]ontractor shall be entitled to payment for deliverables in progress; to the extent work has been performed satisfactorily."

Effective January 1, 2015, the Louisiana Procurement Code ("LPC"). found in Chapter 17 of Subtitle III of Title 39, was amended and reenacted by La. Acts 2014, No. 864, § 2. The LPC was formerly comprised of LSA-R.S. 39:1551 to 39:1758, and now encompasses LSA-39:1551 to 39:1755. Louisiana Acts 2014, No. 864, § 3 further repealed Chapter 16 of Subtitle III of Title 39, LSA-R.S. 39:1481 to 39:1526, known as the Professional Services Procurement Code. The revision by La. Acts 2014, No. 864 retains the general subject matter of Chapter 17 (the LPC) while incorporating material from Chapters 16 (the PSPC) and 17 (the LPC) prior to the revision.
The amended LPC applies only to contracts solicited or entered into after the effective date of January 1, 2015, unless the parties agree to its application to a contract entered into prior to the effective date. See LSA-R.S. 39:1554(A), as revised by La. Acts 2014, No. 864. The contracts herein were entered into prior to January 1, 2015, and contained no such agreement; thus, we will apply and refer to the former version of the LPC and PSPC.

Pursuant to Section 6.0 of the contract, the parties agreed that "[a]ny claim or controversy arising out of the contract shall be resolved by the provisions of Louisiana Revised Statute 39:1524 -26."

The four deliverables at issue were identified as follows: (1) 6D-NGMV Data Inquiry Test Evaluation Report; (2) 2F-Architecture Deployment Evaluation Report; (3) 6F-Unit Tested Data Conversion Program; and (4) 6G-Mock Data Conversion Completion Reports.

Although the Deputy Secretary concluded that the total amount due for the four deliverables was $1,320,084.00, as noted by the Commissioner in her report, the actual total of the four amounts due on deliverables is $1,320,083.00.

The Department subsequently filed an application for supervisory writs from this judgment, which was also denied. See Unisys Corporation v. Louisiana Office of Motor Vehicles, 2015 CW 1976 (La. App. 1st Cir. 4/4/16).

The denial of a peremptory exception raising the objection of no cause of action is interlocutory in nature and generally not appealable. LSA-C.C.P. arts. 1841 and 2083. However, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment appealed from. Landry v. Leonard J. Chabert Medical Center, 2002-1559 (La. App. 1st Cir. 5/14/03), 858 So.2d 454, 461, n.4, writs denied, 2003-1748 (La. 10/17/03), 855 So.2d 761, 2003-1752 (La. 10/17/03), 855 So.2d 761.

Louisiana Civil Code article 1772, entitled, "Fault of a party" provides that "[a] condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment."

The district court's written "Ruling" is also silent as to Unisys's claim for interest.